UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAUNICE ODOM, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 16-cv-864 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Jaunice Odom brings this case, individually and on behalf of her minor child M.U., against the District of Columbia and D.C. Metropolitan Police Department ("MPD") Officer Joseph Hudson. Plaintiffs seek to hold Officer Hudson individually liable, as well as the District municipally liable, for violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983, and for violations of a number of state tort laws arising out of a May 9, 2015 altercation involving several individuals at D.C.'s Maine Avenue Wharf. Defendants have moved for dismissal of all claims brought on behalf of Odom as well as dismissal of a number of counts brought on behalf of M.U.

For the reasons below, Defendants' motion to dismiss will be GRANTED in part as to all counts brought on Odom's behalf except Count X; and Count III, Count IV, and Count XI; and DENIED in part as to Count X on behalf of both Plaintiffs and Count IX as to M.U.

**I.  BACKGROUND**

Plaintiffs allege that Odom and M.U., who was sixteen years old at the time, were at the Maine Avenue wharf when Odom was assaulted by two individuals. (Am. Compl. ¶¶ 15-16). They allege that one of the individuals hit Odom in the face with a crab box, while the second

1

repeatedly struck her in the face with a closed fist. (*Id.* ¶¶ 17-18). According to Plaintiffs, an MPD officer, who they believe was Defendant Hudson, arrived at the scene, and without announcing himself as a police officer, approached M.U. from behind—although M.U. was not participating in the fray or engaging in any criminal conduct, and was unarmed—and grabbed his neck, placing him in a chokehold. (*Id.* ¶¶ 19, 22, 23, 30). At the time, M.U. was approximately 5'9" to 5'10" and weighed 130 to 140 pounds. (*Id.* ¶ 29). Plaintiffs claim that a witness told Hudson when he arrived at the wharf that M.U. had not been involved in the assault. (*Id.* ¶ 21). Plaintiffs allege that Hudson then threw M.U. to the ground and restrained him by wrapping his legs around M.U.'s body. (*Id.* ¶ 24). Hudson then handcuffed and detained M.U. for at least twenty minutes, ignoring Odom's requests for emergency medical attention for M.U. (*Id.* ¶¶ 27, 44). Plaintiffs claim that as a result of the incident, M.U., who has hemophilia, experienced severe physical and emotional injuries. (*Id.* ¶¶ 36, 38, 64). Odom alleges that she also experienced severe emotional trauma. (*Id.* ¶ 39).

Plaintiffs allege eleven counts against Defendants: violations of the Fourth Amendment in the form of (I) excessive use of force and (II) unlawful seizure, (III) deprivation of due process rights in violation of the Fifth Amendment, and (IV) municipal liability on the part of the District for constitutional violations, as well as (V) assault, (VI) battery, (VII) false arrest, (VIII) false imprisonment, (IX) negligence, (X) negligent infliction of emotional distress, and (XI) negligent training and supervision. Defendants have moved for partial dismissal of the Complaint as to all claims brought by Odom individually, as well as M.U.'s Fifth Amendment due process claim against Officer Hudson (Count III), all constitutional claims against the District (Count IV), M.U.'s negligence claim against both Defendants (Count IX), M.U.'s negligent infliction of emotional distress claim against both Defendants (Count X), and M.U.'s negligent training,

supervision, or retention claim (Count XI).  Defendants also ask the court to "dismiss" (which the court construes as a motion to strike), Plaintiffs' punitive damages claim against the District.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In order to survive a motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Additionally, the facts alleged in the complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiffs and "must assume the truth of all well-pleaded allegations."  *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).

## III. ANALYSIS

### A. Odom's claims

Defendants argue that Odom's individual claims against Hudson and against the District must be dismissed because she has not pleaded any facts that would entitle her to relief.  Odom appears to concede that she has not brought a Fourth Amendment or assault claim on her own behalf, and that she has not brought a Fifth Amendment claim at all.  (*See* Opp. at 2 ("plaintiffs concede that their Fifth Amendment claims merge with their Fourth Amendment claims, and concede that no assault occurred against plaintiff Odom").  Even absent Plaintiffs' concession, the court notes that Plaintiffs have cited no precedent, nor is the court aware of any, providing

for recovery under section 1983 by a parent for unlawful use of force or seizure of their minor child.  The court will therefore grant Defendants' motion to dismiss Counts I and II, as well as Count IV, which is also based on violations of M.U.'s constitutional rights, to the extent that Odom brings those counts on her own behalf.  The court will dismiss Count III (Fifth Amendment violation) as to both Defendants, as Plaintiffs concede is appropriate, and Count V (assault), as to Odom individually, as Plaintiffs also concede is appropriate.

Odom continues to assert her Count X negligent infliction of emotional distress claim, (see Opp. at 11-12), but her Opposition is silent as to whether she continues to assert claims on her own behalf on Count VI (battery), Count VII (false arrest), and Count VIII (false imprisonment).  Because Odom concedes that she does not allege assault on her own behalf, and assault is generally a lesser-included offense of battery, the court assumes Odom does not intend to bring a battery claim in her own name, and because the Complaint does not reference any injury to Odom herself in Counts VII and VIII, the court assumes she does not intend to bring her own claims under those counts as well.  The Complaint references Odom as an injured party with regards to Count IX (negligence), but does not reference her with regards to Count XI (negligent training, supervision, and retention).  Because Plaintiffs' Opposition does not argue that the negligence claim applies to Odom personally, the court presumes Plaintiffs intend to pursue Count IX only with regard to M.U.  Therefore, the court will address Odom's ability to state a claim individually only with regards to Count X (negligent infliction of emotional distress).

A plaintiff alleging negligent infliction of emotional distress must demonstrate that "the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being," "there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the

4

plaintiff," and such harm ensues. Under D.C. law, there is a "general rule" that "there is no freestanding duty to avoid the negligent infliction of emotional distress to a 'stranger' unless the actor's negligent conduct has put the plaintiff in danger of bodily harm." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011). But the D.C. Court of Appeals has recognized the "'zone of physical danger' rule, which permits recovery for mental distress if the defendant's actions caused the plaintiff to be 'in danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'" *Id.* at 796 (quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990)). A plaintiff alleging negligent infliction of emotional distress under a "zone of danger" theory need not show physical injury, though the emotional distress alleged must be "serious and verifiable." *Id.* at 797 (internal quotation marks and citation omitted). Courts have applied this principle to law enforcement officers' conduct. *See D.C. v. Evans*, 644 A.2d 1008, 1019 (D.C. 1994) (upholding jury finding of negligent infliction of emotional distress where police officers shot plaintiff's son in her presence).

Although Odom does not allege with regard to Count X that she feared for her own safety, she does allege elsewhere in her Complaint that "Defendant Hudson intentionally acted in a physically aggressive manner to create a state of fear or danger to plaintiffs Odom and M.U." (Am. Compl. ¶ 160).[1] The court finds it plausible, based on the factual allegations in the Complaint, that Odom may have feared for her own safety when Hudson arrived on the scene of a fight and, unprovoked, assaulted her son. Odom has alleged sufficient facts to indicate that she was in the "zone of danger," where a law enforcement officer was using unwarranted and unpredictable force against her minor son, and could have turned to her and treated her in the same manner. Although the D.C. Court of Appeals has held "a mother cannot recover for the

---

[1] Plaintiffs also state in their Opposition that "[b]oth plaintiffs were placed in a zone of danger due to the negligent acts of defendants, which resulted in them fearing for their life and safety." (Opp. at 11).

5

emotional distress caused by witnessing harm that was negligently inflicted on her child alone," *see Johnson v. D.C.*, 728 A.2d 70, 77 (D.C. 1999), the court finds Odom has sufficiently alleged "that she was physically endangered by the defendant's negligent activity." *Id.* The court will accordingly deny Defendants' motion to dismiss as to Odom's claim in Count X on her own behalf.

### B. M.U.'s Claims

Defendants move to dismiss M.U.'s claims in Counts III, IV, IX, X, and XI.

#### i. Count III (Fifth Amendment)

In light of Plaintiffs' concession that the Fifth Amendment claim merges with the Fourth Amendment claim, Count III will be dismissed.

#### ii. Count IV (Municipal liability)

Defendants contend that Plaintiffs have failed to plead a viable constitutional claim against the District in Count IV. A plaintiff cannot bring a section 1983 claim against a municipality for an injury inflicted by a municipal employee or officer; municipal liability is only appropriate where a plaintiff can demonstrate that a government policy or custom was the "moving force" behind the alleged constitutional injury. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To meet *Monell*'s requirements, a plaintiff may show an unconstitutional ordinance, *see id.*; an act of city council that violates the plaintiff's constitutional rights, *see Owen v. City of Indep., Mo.*, 445 U.S. 622, 629 (1980); or a one-time decision by a municipal employee or official with final, policy-making authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). The Supreme Court has held that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma*

*City v. Tuttle*, 471 U.S. 808, 823–24 (1985). A city or municipality can be held liable for failure to properly train officials or employees in a manner that makes it highly foreseeable that constitutional violations will result. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ("it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"). And a city or municipality may be liable for failure to properly screen employees, where review of an applicant's background would lead a reasonable policymaker to conclude that it is a "plainly obvious consequence" that the person would commit constitutional violations. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 411 (1997). A *Monell* claim must allege a degree of culpability of at least deliberate indifference toward constitutional violations on the part of the municipal officers responsible for the policy, ordinance, custom, decision, or absence of policy, in the case of a failure to train or screen claim. *Id.* at 411.

The D.C. Circuit has differentiated between *"[p]roving* a failure-to-train claim," which "is no easy task," and "alleging municipal liability under section 1983 for failure to train," which "is to be judged not by the standards that would govern a decision on the merits." *Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C. Cir. 1996) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163-69 (1993) (rejecting a heightened pleading standard for *Monell* claims). Although *Atchinson* was decided before *Twombly* and *Iqbal*, the holdings in *Atchison* and *Leatherman* continue to suggest that a plaintiff need only allege facts that meet the plausibility standard. Where liability is premised on a municipal policy or absence thereof, rather than a single act by a policymaker, a plaintiff should describe at least "the

contours" of the policy. *Blue v. D.C.*, 811 F.3d 14, 20 (D.C. Cir. 2015), *cert. denied*, 137 S. Ct. 77 (2016).

The D.C. Circuit has described a *Monell* analysis as a two-step inquiry: first, whether the plaintiff alleges a "predicate constitutional violation," and second, "whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Baker v. D.C.*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Here, Plaintiffs have clearly alleged a "predicate constitutional violation"—the use of excessive force against M.U. in violation of his Fourth Amendment rights. But Plaintiffs' Amended Complaint fails at the second step.

Plaintiffs allege that the District has a "pattern, practice, policy, and custom" of "failing to effectively train, supervise, discipline, and control the personnel its [sic] employs as police officers;" that the District did not properly hire, train, supervise, suspend, fire, and discipline Hudson; that MPD has a pattern and practice of using excessive force against civilians in violation of the Fourth Amendment; and that the District, with deliberate indifference, fails to deter unconstitutional conduct. (Am. Compl. ¶¶ 136-142).

Defendants contend, and the court agrees, that Plaintiffs' allegations are not specific enough to state a *Monell* claim—not under a *Harris* theory involving an absence of training in the face of an obvious need, nor under a pattern and practice theory. Plaintiffs have alleged one actual incident of use of excessive force—the incident described in the Complaint—and alleged a "pattern" in a conclusory fashion, without pleading any facts that would demonstrate a pattern. Plaintiffs have not alleged the existence of other lawsuits against MPD officers for similar excessive use of force, or complaints filed with the Office of Police Complaints; their Complaint is devoid of any factual allegations which would support their claim that the District has a custom or unwritten policy that caused the constitutional violation. The court therefore finds that Plaintiffs have not pleaded facts that would demonstrate *Monell* liability.

Plaintiffs attempt to rely on *Harris's* holding that *Monell* liability may be possible where the lack of training is obviously likely to result in constitutional violations. *Harris*, 489 U.S. at 190. But this reliance is misplaced. *Harris* recognized that a municipality's failure to provide any training on an issue that would obviously necessitate training—such as use of force or determining when detainees need medical treatment—can in some circumstances demonstrate municipal deliberate indifference. But Plaintiffs here have not alleged that the District or MPD provides no training to police officers on the use of excessive force; in fact, Plaintiffs referenced the MPD's official policies restricting the use of force to its constitutional limits. (Am. Compl. ¶ 47 ("Defendant Hudson acted in a manner that was contrary to the procedures set forth by the District of Columbia and the District of Columbia Metropolitan Police Department General Orders, specifically, GO-RAR-901.07, Use of Force")). Plaintiffs' argument that the officers' training is inadequate, (*see* Am. Compl. ¶ 70 ("District of Columbia has . . . fail[ed] to . . . conduct sufficient training or supervision with respect to the constitutional limitations on the use of force")), does not state a claim under *Harris*. Because Plaintiffs do not allege that the District fails to provide *any* training on the use of force, Plaintiffs' *Monell* claim requires pleading additional facts that would demonstrate that the training was insufficient and that the District knew or should have known that the training was insufficient.

Plaintiffs allege that the District and MPD failed to discipline Hudson after the incident with M.U. Defendants contend that the failure to discipline Hudson after the fact cannot be causally linked to the prior incident, to which Plaintiffs respond that the failure to discipline was not the "moving force" of the alleged constitutional violations, but serves as "evidence of the customs, practices, patterns, and policies" the Plaintiffs allege. (Opposition at 7). The court finds that failure to discipline Officer Hudson could constitute evidence of an unwritten policy or custom, but not taken in isolation. Plaintiffs' *Monell* theory relies on one incident involving one

9

officer and the District's subsequent response to that one incident; without more, Plaintiffs fail to state a claim for municipal liability based on failure to reprimand. *See Blue*, 811 F.3d at 19 (pleading *Monell* liability based on failure to reprimand requires allegations of "fail[ure] to respond to improper actions by numerous municipal officials").

Simply put, Plaintiffs have not stated a *Monell* claim based on the incident alleged in the Amended Complaint, and have not alleged any additional incidents or facts that could comprise a pattern or custom. Plaintiffs have not named other complainants in excessive force cases, or cited any statistics or reports on excessive force lawsuits brought against MPD or D.C. The court therefore must dismiss Count IV. *See Costello v. D.C.*, 826 F. Supp. 2d 221, 225-26 (D.D.C. 2011) ("While the plaintiffs have alleged in conclusory terms that the District failed to train its officers regarding the lawful execution of search warrants, they have pleaded no *facts* indicating that the District's decisionmakers knew or should have known of any deficiencies in the training of its police officers concerning the execution of search warrants.") (internal citation omitted).

        iii.    **Count IX (Negligence)**

Defendants argue that Plaintiffs cannot bring both battery and negligence claims in an excessive force case, citing *D.C. v. Chinn*, 839 A.2d 701, 707 (D.C. 2003), which held that in order to state a claim for negligence as well as assault and battery against a police officer for use of excessive force, there must be "at least one distinct element, involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest." In other words, a plaintiff may not plead negligence and assault and battery as alternatives where the basis of either claim is excessive use of force. The claims are not alternatives; they are the same claim, because if a jury finds that a police officer used a reasonable amount of force, the officer neither breached the standard of care (as required to find negligence) nor committed assault or

battery. Plaintiffs respond by citing a federal district court case in which a plaintiff was allowed to plead negligence and battery as alternative theories of liability as long as they did not recover for both inconsistent theories. *Harvey v. Kasco*, 109 F. Supp. 3d 173, 178-79 (D.D.C. 2015). The court in *Harvey* explained that Federal Rule of Civil Procedure 8(d)(3), which Plaintiffs also invoke here, allows the pleading of alternative inconsistent theories. *Id.* (citing Fed. R. Civ. Proc. 8(d)(3)). Because Rule 8 is a procedural, rather than a substantive rule, the court will apply the federal rule in this supplemental jurisdiction context.[2] Whether Plaintiffs' theories of liability are alternatives under D.C. law, or constitute different torts that represent the same claim, the court will allow both at this stage. If the case proceeds to trial, the parties will have to brief, and the court determine, the appropriate jury instruction. *See*, *e.g.*, *Rice v. D.C.*, 818 F. Supp. 2d 47, 57 (D.D.C. 2011) (reducing jury award because jury had found defendant police officer both negligent and liable for battery for excessive use of force).

Plaintiffs proffer an additional argument in support of their negligence claim: that under D.C. law, they may plead a "distinct element, involving an independent breach." *Chinn*, 839 A.2d at 707. Here, Plaintiffs allege Hudson committed the "independent breach" of failing to provide appropriate medical care *after* causing M.U.'s injuries by assault and battery. Although police officers do not generally have a heightened duty to provide care to strangers,[3] there is an

---

[2] *See Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002) ("the Supreme Court has made clear that the [*Erie*] doctrine applies . . . to state law claims . . . that are brought to the federal courts through supplemental jurisdiction"); *Hanna v. Plumer*, 380 U.S. 460, 473–74 (1965) (a Federal Rule of Civil Procedure is to be applied by federal courts in resolving state claims unless the Rule exceeds the scope of the Rules Enabling Act). *See also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) (finding federal courts without power to implement federal substantive law in diversity jurisdiction cases).

[3] *See*, *e.g.*, *McGaughey v. D.C.*, 734 F. Supp. 2d 14, 18 (D.D.C. 2010), aff'd, 684 F.3d 1355 (D.C. Cir. 2012) (quoting *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C.1990)) ("Under the public duty doctrine, the District 'owe[s] no duty to provide public services to particular citizens as individuals. Instead, . . . the District's duty is to provide public services to the public at large.'").

11

exception where there is a "special relationship" between the police officer and the plaintiff. *Powell v. D.C.*, 602 A.2d 1123, 1128 (D.C. 1992). A special relationship exists where an official has "a direct transaction with the person injured or an arms-length relationship in which the city's agent is dealing directly, in some form, with the person injured." *Id.* at 1130 (internal quotation marks and citation omitted). Plaintiffs' Complaint plausibly alleges the type of special relationship between M.U. and Hudson, who, according to Plaintiffs, assaulted M.U. and caused him physical injury, such that Hudson would have had a duty under the "special relationship" exception to assist M.U. in obtaining medical care. The court therefore finds that Plaintiffs state an additional claim for negligence based on failure to call an ambulance or otherwise provide medical care.

        iv.    **Count X (Negligent Infliction of Emotional Distress)**

Defendants argue that M.U. has not properly stated a claim for negligent infliction of emotional distress because "the claim is inextricably and fatally intertwined with the intentional torts claims." (Mot. to Dismiss at 12). As discussed previously, the court disagrees with Defendants' premise and will allow alternative pleading. Defendants also contend that "[t]he facts alleged . . . simply do not support Plaintiffs' conclusory allegations that they experienced negligent infliction of emotional distress."

Plaintiffs allege that, without any indication of wrongdoing, a police officer placed a 16-year-old in a chokehold from behind, slammed him to the ground, restrained him, and then ignored his mother's request for help obtaining urgent medical assistance. Defendants' argument that these facts, if true, would not support an emotional distress claim, is mystifying. It will ultimately be the task of a jury, not the court, to determine whether Plaintiffs' representations as to their emotional state are credible, but under the pleading standard enunciated in *Twombly* and

*Iqbal*, Plaintiffs have alleged sufficient facts to establish a claim for negligent infliction of emotional distress.[4]

### v. Count XI (Negligent training, supervision, and retention)

A claim for "negligent supervision" requires a plaintiff to demonstrate "that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001). Negligent training and retention claims require similar allegations. *See D.C. v. White*, 442 A.2d 159, 165 (D.C. 1982) (negligent training issue improperly submitted to the jury absent evidence regarding MPD training); *Rogala v. D.C.*, 161 F.3d 44, 56 (D.C. Cir. 1998) ("In order to prevail on a negligent retention claim, plaintiffs must first prove that [defendant police officer] was negligent and must then prove the additional element of negligent retention").

Defendants contend that Plaintiffs have not pleaded any facts demonstrating the District knew or should have known of Hudson's or other employees' tendencies to behave in a dangerous manner. Plaintiffs respond that their allegations of a pattern, practice, and policy of excessive force, and of allowing the use of excessive force to go undisciplined, suffices to allege that the District had notice of its employees' tendencies. The court finds that Count XI must be dismissed for the same reasons as the *Monell* claim. Plaintiffs have not pleaded any facts demonstrating a pattern or practice of excessive force, nor any facts which, if true, would provide the District with actual or constructive notice of inadequate training or supervision. Plaintiffs

---

[4] The court notes that Defendants have moved for dismissal of the negligence and negligent infliction of emotional distress claims as to both Defendants, but the parties have only briefed whether dismissal is warranted as to Officer Hudson. The court will therefore deny the motion as to both counts as to both Defendants. Should Defendants believe dismissal is warranted against the District as to counts IX and X on separate grounds, they may so argue in a subsequent motion to dismiss.

have not alleged any prior incidents involving Officer Hudson and have therefore similarly failed to state a claim for negligent retention.

### C. Punitive damages

The Complaint requests punitive damages because of the District's conduct with regards to Count IV. (Am. Compl. ¶ 156). Defendants argue that punitive damages against the District are not authorized, and Plaintiffs have not addressed Defendants' argument in their Opposition. Although the court grants Defendants' motion to dismiss Count IV, thereby mooting the question of punitive damages against the district, the court agrees with Defendants; the Supreme Court has held that punitive damages may not be assessed against a municipality in a section 1983 suit. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). To the extent that Plaintiffs seek punitive damages against the district for any non-constitutional count, the court notes that D.C. tort law also does not allow for recovery of punitive damages against a municipality. *See Finkelstein v. D.C.*, 593 A.2d 591, 599 (D.C. 1991) ("punitive damages may not be awarded against the District of Columbia"); *Ramos v. D.C. Dep't of Consumer & Regulatory Affairs*, 601 A.2d 1069, 1074 n.9 (D.C. 1992) ("We note '[t]he clear weight of authority ... is that as a general rule there can be no recovery of punitive damages against a municipality absent a statute expressly authorizing it'") (quoting *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C.1975)); *Daskalea v. D.C.*, 227 F.3d 433, 447 (D.C. Cir. 2000) (finding that although it is possible that "the D.C. Court of Appeals would permit punitive damages in some not-yet-presented category of 'extraordinary' cases" against the District, such a category would likely be one "where taxpayers are directly responsible for perpetrating the policies that caused the plaintiff's injuries" or "where a municipality or its policymakers have intentionally adopted the unconstitutional policy that caused the damages in question"). Here, Plaintiffs have not alleged any tort liability stemming from taxpayers' conduct, and the court has dismissed any claims

pertaining to District policy. The District is therefore not subject to punitive damages for any other counts alleged against the District, and the court will strike the request for punitive damages against the District.

## IV.     Conclusion

For the reasons set forth above, Defendants' partial motion to dismiss will be GRANTED in part and DENIED in part. The court will grant the motion to dismiss all claims brought by Plaintiff Odom in her own name, with the exception of Count X for negligent infliction of emotional distress; the court will grant the motion to dismiss Count III, Count IV, and Count XI; and the court will deny the motion to dismiss M.U.'s claims in Counts IX and X. The court will grant Defendants' request that it construes as one to strike the punitive damages demand against the District.

A corresponding order will issue separately.

Dated: March 31, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge