# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAUNICE ODOM, *et al.*, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) Civil Action No. 16-cv-864 (TSC) <br> ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

## **MEMORANDUM OPINION**

Plaintiff Malachi Urquhart alleges that he tried to break up a fight between his mother, Plaintiff Jaunice Odom, and two women at the D.C. Wharf. While he was positioned between his mother and one of the women, the other woman hit him in the head with a bag of crabs. Urquhart claims that almost immediately, Defendant Metropolitan Police Department Officer Joseph Hudson placed Urquhart in a chokehold and threw him down, causing him to hit his head on the ground. Officer Hudson continued to apply the chokehold and climbed on top of Urquhart, who lost consciousness. When he regained consciousness, he was dragged to the sidewalk and placed in handcuffs.

Hudson provides a different version. He claims that he was working as a part-time security officer at the Wharf when he heard there was a fight in progress. He turned to investigate and saw Urquhart hit a woman in the face and ball his fist to punch another woman. Because he had just seen Urquhart commit one crime and prepare to commit another, he detained Urquhart by grabbing him around the waist in a bear hug. Hudson contends that because

1

Urquhart was flailing and shaking to get Hudson off, Hudson either lost his balance or tripped, and both fell to the ground.

These conflicting versions of events require the court to deny Defendants' motion for partial summary judgment with respect to Urquhart's claims. Viewed in the light most favorable to Urquhart, his evidence shows that Hudson lacked probable cause to arrest Urquhart because he was an innocent peacemaker and not an assailant, that Hudson used excessive force restraining him, and that no reasonable officer in Hudson's situation would have believed that his conduct was lawful. Thus, Hudson is not entitled to judgment as a matter of law.

However, the court will grant Defendants' motion for summary judgment on Odom's negligent infliction of emotional distress claim. It is uncontested that Odom did not see the initial interaction between Urquhart and Hudson; she saw only Hudson pulling Urquhart to the sidewalk. Because Odom fails to demonstrate either that she feared for her own safety or that what she saw caused her emotional harm, two of the elements of her claim, Defendants are entitled to judgment as a matter of law.

**I.     BACKGROUND**

Odom and Urquhart[1] filed their Amended Complaint on June 6, 2016, alleging claims against Hudson and the District of Columbia based on 42 U.S.C. § 1983 and common law torts. The court granted Defendants' motion to dismiss in part on March 31, 2017. *See Odom v. District of Columbia*, 248 F. Supp. 3d 260 (D.D.C. 2017). The remaining counts were Urquhart's § 1983 claim against Hudson for violating his Fourth Amendment right to be free

---

[1] Because Malachi Urquhart was a minor when this case was filed, Odom brought the case on behalf of herself and her minor child, who was referred to as M.U. in earlier filings. Urquhart has since turned eighteen, and the court granted a motion to substitute him as a plaintiff bringing claims on his own behalf.

from unreasonable seizure (Count I); Urquhart's § 1983 claim against Hudson for violating his Fourth Amendment rights through the use of excessive force (Count II); Urquhart's assault claim against Hudson and the District of Columbia (Count V); Urquhart's battery claim against Hudson and the District of Columbia (Count VI); Urquhart's false arrest claim against Hudson and the District of Columbia (Count VII); Urquhart's false imprisonment claim against Hudson and the District of Columbia (Count VIII); Urquhart's negligence claim against Hudson and the District of Columbia (Count IX); and Urquhart and Odom's negligent infliction of emotional distress claims against Hudson and the District of Columbia (Count X). All the claims against the District of Columbia are brought under a theory of *respondeat superior*.

Defendants have now moved for summary judgment on all claims except Urquhart's claims of negligence (Count IX) and negligent infliction of emotional distress (part of Count X). Defendants argue that Hudson is entitled to qualified immunity with respect to Urquhart's § 1983 claims based on unreasonable seizure and excessive force (Counts I and II); that Hudson is entitled to a qualified privilege with respect to Urquhart's common law claims for assault, battery, false arrest, and false imprisonment (Counts V, VI, VII, and VIII); that because of Hudson's qualified privilege, the District of Columbia cannot be held liable under a theory of *respondeat superior* for Urquhart's common law claims; and that Odom's negligent infliction of emotional distress claim (part of Count X) fails as a matter of law, because she neither feared for her safety nor suffered serious and verifiable emotional harm.

## II.   SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact

exists, the court must view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (internal quotation marks omitted). The party opposing summary judgment then must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). When viewing the evidence, a court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

### III. ANALYSIS

Plaintiffs have grouped their claims into three categories: 1) Urquhart's constitutional and common law claims based on an unreasonable seizure (Counts I, VII, and VIII); 2) Urquhart's constitutional and common law claims based on excessive force (Counts II, V, and VI); and 3) Odom's negligent infliction of emotional distress claim (part of Count X).

## A. Unreasonable Seizure Claims

Section 1983 provides a cause of action against:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. A plaintiff "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991).

"Section 1983 claims are properly brought against government actors in their personal capacity." *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 237 (D.D.C. 2018) (citing *Jones v. Horne*, 634 F.3d 588, 602 (D.C. Cir. 2011)). Therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.*

The essence of Urquhart's § 1983 unreasonable seizure claim (Count I) is that Hudson arrested him without probable cause, thereby depriving him of the right secured by the Fourth Amendment to be free from unreasonable seizures, and that Hudson acted under color of state law in his capacity as an MPD officer.[2] The elements of Urquhart's common law false arrest claim (Count VII) are substantially identical to the elements of his constitutional claim for false arrest, because in each instance "the focal point of the action is the question whether the arresting

---

[2] Defendants do not contest that Hudson "seized" Urquhart under the Fourth Amendment, and that Hudson was acting under color of state law.

5

officer was justified in ordering the arrest of the plaintiff." *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996). Additionally, as to Urquhart's false imprisonment claim (Count VIII), "[t]here is 'no real difference as a practical matter between false arrest and false imprisonment.'" *Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 214 (D.D.C. 2010) (quoting *Shaw v. May Dep't Stores Co.,* 268 A.2d 607, 609 n. 2 (D.C.1970)). Therefore, to succeed on these three claims, Urquhart must demonstrate, at a minimum, that there was no probable cause to justify his arrest.

Hudson claims that he is entitled to summary judgment as a matter of law with respect to Urquhart's § 1983 unreasonable seizure claim because Hudson is protected by qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hedgpeth v. Rahim*, 893 F.3d 802, 806 (D.C. Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Qualified immunity "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

To defeat a claim of qualified immunity on a Fourth Amendment claim, a plaintiff "must show that: (i) the officer[] violated his Fourth Amendment rights; and (ii) his Fourth Amendment rights were clearly established in light of the specific context of the case." *Hedgpeth*, 893 F.3d at 806 (quotation marks and citation omitted).

In determining whether a police officer's warrantless arrest is protected by qualified immunity, courts first "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)

(quotation marks and citations omitted). Probable cause "deals with probabilities and depends on the totality of the circumstances." *Id.* "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*

"Although the Supreme Court's decisions do 'not require a case directly on point for a right to be clearly established' for purposes of qualified immunity, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hedgpeth*, 893 F.3d at 806 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). A law is clearly established if, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (quotation marks and citations omitted). Thus, "existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* (quotation marks and citation omitted). Moreover, "the 'clearly established law should not be defined at a high level of generality,' but 'must be particularized to the facts of the case.'" *Hedgpeth*, 893 F.3d at 806 (quoting *Pauly*, 137 S. Ct. at 552). Qualified immunity, therefore, "protects all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (quotation marks and citations omitted). "In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause." *Id.* at 590 (alterations in original) (quotation marks and citations omitted).

The record in this case presents genuine disputes of material fact about whether the "facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause," *Wesby*, 138 S. Ct. at 586 (quotation marks and citation omitted), and whether the absence of probable cause was "sufficiently clear that every reasonable official [in Hudson's

7

position] would understand" that his conduct was unlawful. *Id.* at 589 (quotation marks and citations omitted).

Officer Hudson was working in a part-time capacity as a security officer at the Wharf on May 9, 2015. Defendants' Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 39. Although the record does not indicate why, Odom, who along with her son, were also at the Wharf, became involved in a fight with two other women, Latoya Nimmons-Van Dyke and Betty Nimmons Gentry. *Id.* ¶ 2. When Urquhart got between one of the women and his mother, a different woman hit him in the head with what one witness described as a "big box wrapped around a big bag of crabs." *Id.* ¶ 4. Stacey Toy, an eyewitness to these events, saw Urquhart back up a little after being hit, although he did not fall. *Id.* ¶ 5. Officer Hudson then arrived on the scene. *Id.*

Officer Hudson claims that he heard somebody yell from a crowd that a fight was occurring. Hudson Dep. at 59, ECF No. 41-6. When Hudson turned, he saw Odom and an older woman fighting. *Id.* Hudson began moving toward the fight, screaming at them to stop fighting and blowing his whistle. *Id.* at 60-61. He then saw Urquhart come from the left side of his field of vision and punch the woman Odom was fighting in the face. *Id.* at 61. Hudson then observed another woman who also came from the left side of his vision hit Urquhart on the back of his legs and on his back with a bushel of crabs. *Id.* Urquhart turned to the woman who was hitting him with the bushel of crabs with his "fist balled and drawn back as if he was about to throw a punch." *Id.* at 64. At this point, Hudson intervened and detained Urquhart. *Id.*

Nimmons Gentry testified in her deposition that before Hudson grabbed Urquhart, Urquhart had jumped on Nimmons-Van Dyke's[3] back and "pursued to hit her." Nimmons Gentry Dep. at 27.

Urquhart claims that upon seeing one of the women strike his mother, he put himself in the middle of the fight to try to break it up. Urquhart Dep. at 23. While he was standing between his mother and one of the women, someone hit him in the head with a bag of crabs. *Id.* at 24. Urquhart turned around to see who hit him, but was immediately put in a chokehold. *Id.* at 26.

Toy testified that after Odom and two women became involved in a verbal dispute, one of the women hit Odom. Toy Dep. at 13. Toy saw Urquhart walk toward the fight and a woman hit Urquhart with a bag of crabs. *Id.* at 13. A police officer arrived "out of nowhere," picked up Urquhart, and slammed him headfirst on the ground. *Id.* at 14, 17. When the police officer picked up Urquhart, Urquhart's arms were at his waist. *Id.* at 22.

Based on the evidence in the record, if a fact-finder believed that Hudson saw Urquhart hit a woman in the face and prepare to strike another, Urquhart's unreasonable seizure claims would fail, because Hudson would have had probable cause to arrest Urquhart. Under D.C. law an officer may conduct a warrantless arrest for any crime committed in the officer's presence. *Perkins v. United States*, 936 A.2d 303, 309 (D.C. 2007) ("[A] law enforcement officer may make a warrantless arrest of 'a person who he has probable cause to believe has committed or is committing an offense in his presence.'") (quoting D.C. Code § 23-581(a)(1)(B) (2001 and Supp. 2006)). Under Hudson's version of events, he had probable cause to believe Urquhart committed an assault. *See* D.C. Code § 22-404(a)(1) ("Whoever unlawfully assaults, or threatens another in

---

[3] Nimmons-Van Dyke is also referred to as Candy.

a menacing manner, shall be fined not more than the amount set forth in § 22-3571.01 or be imprisoned not more than 180 days, or both.").

But there is also sufficient evidence for a reasonable fact-finder to disbelieve Hudson's version of events, because Urquhart claims that he never threw a punch, and Toy's testimony corroborates Urquhart's account. Toy's recollection is even more helpful to Urquhart than his own, because she testified that Urquhart's arms were at his side when Hudson grabbed him. Even Nimmons Gentry, who testified that Urquhart "pursued to hit" Nimmons-Van Dyke, never saw Urquhart actually punch Nimmons-Van Dyke as Hudson claims. Moreover, Hudson's description of the event in his Offense Report does not state that he saw Urquhart raising his first and preparing to punch another woman. *See* Offense Report, ECF No. 42. In sum, if a fact-finder believes Urquhart's version, then Hudson's defense of qualified immunity fails insofar as it is based on the existence of probable cause for the arrest, because Hudson could not have seen Urquhart committing a crime or attempting to commit a crime.

If credited, Urquhart's version of events would negate the possibility that Hudson "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *Wesby*, 138 S. Ct. at 591 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Urquhart claims he was doing nothing suggestive of criminal behavior; in Toy's account he was standing with his arms by his side, and it is uncontested that Urquhart was hit on the head with a box or bag of crabs. Under these circumstances, no reasonable police officer could have concluded that probable cause existed to arrest Urquhart, especially when Hudson had no other reason to think that Urquhart was an aggressor.

In *Wesby*, the Supreme Court found that an officer's mistake about probable cause does not violate a clearly established right unless "existing precedent…place[s] the lawfulness of the

particular arrest 'beyond debate.'" *Wesby*, 138 S. Ct. at 590 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). The Court also acknowledged, however, that "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)). Here, absent any indication that Urquhart was engaged in criminal conduct, "at the time of [Hudson's] conduct, the law was sufficiently clear that every reasonable official would understand that what he [was doing in arresting Urquhart was] unlawful." *Id.* at 589 (quotation marks and citation omitted).

In arguing for qualified immunity, Defendants rely heavily on Hudson's disputed claim that he believed he saw Urquhart strike one of the women and prepare to throw a second punch. SUMF ¶ 6; Pls.' Response to SUMF ¶ 6. Defendants argue that, given Hudson's assertion, "[e]ven if Defendant Hudson was wrong in what he believed, he would still be entitled to qualified immunity under the second prong of the qualified immunity analysis." Defendants' Motion for Partial Summary Judgment at 6. But Defendants fail to identify how the facts, viewed in the light most favorable to Urquhart, would support a reasonable, if mistaken, belief that Urquhart was a criminal aggressor. For instance, Defendants do not identify uncontested facts showing that a reasonable officer in Hudson's situation would have had difficulty discerning who was punching whom, or that an officer could have reasonably believed that Urquhart was the aggressor, not the victim. Simply put, Defendants have not shown why, when the evidence is viewed in the light most favorable to Urquhart, Hudson's mistaken belief that Urquhart punched one woman and was prepared to strike another was reasonable under these circumstances.

Because Defendants have not shown that they are entitled to qualified immunity as a matter of law at this stage of the case, the motion for summary judgment as to Count I will be denied.

Defendants also contend that Hudson is entitled to a qualified privilege as to Urquhart's common law claims for false arrest (Count VII) and false imprisonment (Count VIII). Although the D.C. Circuit has stated that "[c]onstitutional and common law claims of false arrest are generally analyzed as though they comprise a single cause of action," *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 989 (D.C. Cir. 2014) (citations omitted), *Wesby* requires a higher showing for a constitutional false arrest claim to overcome the hurdle of an officer's qualified immunity defense. Therefore, the court analyzes the constitutional and common law claims separately. However, since Hudson is not entitled to qualified immunity with respect to Urquhart's constitutional false arrest claim, *a fortiori* his qualified privilege defense as to Urquhart's common law claims of false arrest and false imprisonment fails.

"In actions for false arrest and false imprisonment, the central issue is 'whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails.'" *Scott v. District of Columbia,* 493 A.2d 319, 321 (D.C. 1985) (quoting *Dellums v. Powell,* 566 F.2d 167, 175 (D.C. Cir. 1977)). An officer may rely on a "showing that he used only reasonable force to maintain the arrest and that he made the arrest in good faith and with probable cause." *Id.* (citing *Wade v. District of Columbia*, 310 A.2d 857, 862 (D.C. 1973) (en banc)). An officer "need not allege and prove probable cause in the constitutional sense. . . . [Rather] the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable." *Id.*

12

at 322 (quoting *Wade*, 310 A.2d at 862) (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir. 1972)).

As with the qualified immunity analysis, viewing the evidence in the light most favorable to Urquhart, a reasonable fact-finder could reject Hudson's claim that he had a good-faith belief that he saw Urquhart punch a woman and prepare to punch another and therefore had probable cause to arrest Urquhart. In addition, even if a reasonable fact-finder credited Hudson's contention that he believed he witnessed Urquhart act criminally, that same fact-finder could find Hudson's belief unreasonable when viewing the evidence in the light most favorable to Urquhart. Therefore, the court will deny Defendants' motion for summary judgment as to Count VII and Count VIII.

### B. Excessive Force Claims

Urquhart claims that Hudson used excessive force when arresting him, thereby depriving him of the right secured by the Fourth Amendment to be free from excessive force, and that Hudson acted under color of state law in his capacity as an MPD officer. "The Fourth Amendment's prohibition on unreasonable seizures extends to an officer's use of excessive force to conduct an arrest." *Hedgpeth v. Rahim*, 893 F.3d 802, 809 (D.C. Cir. 2018) (citation omitted).

Hudson contends that he is entitled to summary judgment as a matter of law because he is protected by qualified immunity. The qualified immunity framework for the § 1983 excessive force claim is the same as the § 1983 unreasonable seizure claim—in other words, Urquhart must show 1) that Hudson violated his Fourth Amendment rights and 2) that those rights were "clearly established in light of the specific context of the case." *Hedgpeth*, 893 F.3d at 806 (quotation marks and citation omitted).

An unlawful arrest does not itself establish excessive force. *See, e.g., Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 n.13 (9th Cir. 2015) ("Like this court, all other circuits that

13

have addressed the question prohibit a finding of excessive force predicated *only* on the fact of unlawful arrest.") (emphasis in original). Therefore, although the court has already found that Hudson is not entitled to qualified immunity at this time as to Urquhart's unreasonable seizure claims, that finding alone does not resolve the issue of whether Hudson is entitled to qualified immunity as to Urquhart's Fourth Amendment excessive force claims.

The amount of force used to effectuate a seizure must be reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether force is reasonable depends "on 'the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009) (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)). The test is an "objective" one and "the subjective intent of the officer . . . is irrelevant." *Id.* (citing *Whren v. United States,* 517 U.S. 806, 812–13 (1996)).

By Urquhart's account, as discussed above, he was an innocent peacemaker, not an aggressive lawbreaker, when Hudson violently seized him without justification, placed him in a headlock, obstructed his ability to breathe, and threw him down, causing him to hit his head on the ground. Urquhart Dep. at 26-29. Hudson then got on Urquhart's back, while still applying a chokehold, causing him to lose consciousness. *Id.* at 26-30. When Urquhart woke up, he was "being dragged to the sidewalk." *Id.* at 29-30. Toy also testified that she "saw the police officer come, run, grab [Urquhart] at the waist, slammed him, hit his head first." Toy Dep. at 17. Urquhart claims that as a result of Hudson's actions, he suffered a concussion, injuries to his elbows, and lacerations to and swelling of his head. Pls.' Statement of Material Facts in Dispute ¶¶ 6-9.

14

Hudson's actions, as alleged by Urquhart, are not *per se* excessive. The Supreme Court has made clear that even deadly force may be appropriate under certain circumstances. "[T]he Court held that '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

But Hudson's actions, under the facts described by Urquhart, were not reasonable or proportionate to the existing circumstances. If Urquhart had been merely standing between his mother and another woman in an attempt to defuse a fight, there was no "crime at issue." *Wasserman*, 557 F.3d at 641 (quoting *Graham,* 490 U.S. at 396). Under this scenario, Urquhart posed no threat to Hudson or anyone else, and he did not resist arrest or attempt to flee before Hudson placed him in a chokehold and slammed him headfirst to the ground. Therefore, the evidence, viewed in the light most favorable to Urquhart, supports a finding that Hudson violated his Fourth Amendment right to be free from an officer's use of excessive force.

As to the second step of the qualified immunity analysis, no reasonable officer would have believed that the level of force that Hudson used was reasonable when viewing the circumstances in the light most favorable to Urquhart. Under Urquhart's version of the facts, the scenario was one "in which any competent officer would have known" that Hudson's actions "would violate the Fourth Amendment." *Hedgepeth*, 893 F.3d at 809 (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018)). Therefore, at this stage of the litigation, the court rejects Hudson's contention that qualified immunity shields him from Urquhart's Fourth Amendment excessive force claim, and the motion for summary judgment as to Count II will be denied.

As to Urquhart's common law claims, under D.C. law, "[a]n assault is an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff. A battery is an intentional act that causes a harmful or offensive bodily contact." *District of Columbia v. Jackson*, 810 A.2d 388, 392 (D.C. 2002) (quoting *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997)). Nonetheless, "[i]n the course of making a lawful arrest, a police officer is privileged to use force so long as the 'means employed are not in excess of those which [he] reasonably believes [are] necessary.'" *Kinberg v. District of Columbia*, 1998 WL 10364, at *13 (D.D.C. 1998) (internal quotation omitted) (quoting *Etheredge v. District of Columbia,* 635 A.2d 908, 916 (D.C. 1993)). "This standard is similar to the excessive force standard applied in the Section 1983 context." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 28 (D.D.C. 2011) (quoting *Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998)).

Defendants contend that Hudson is entitled to a qualified privilege with respect to Urquhart's common law claims for the assault (Count V) and battery (Count VI) claims. However, Hudson's qualified privilege argument as to the common law claims fails for the same reasons as his qualified immunity argument. The court will therefore deny the motion for summary judgment as to Count V and Count VI.

### C. Odom's Negligent Infliction of Emotional Distress Claim

Odom claims that Hudson and the District of Columbia are liable to her for negligent infliction of emotional distress. In *Williams v. Baker*, 572 A.2d 1062 (D.C. 1990), the District of Columbia Court of Appeals held "that one may recover for emotional distress caused by witnessing injury to an immediate family member only if the claimant was in the zone of physical danger and as a result feared for his or her own safety." *Id.* at 1064 (footnote omitted). Moreover, the plaintiff's "claimed distress must be serious and verifiable." *Id.* at 1068

16

(quotation marks and citation omitted). Thus, "the elements of a claim for negligent infliction of emotional distress are: (1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable." *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011). Although an injury must be serious and verifiable, "the plaintiff need not experience a physical manifestation of the mental injury." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 797 (D.C. 2011) (citing *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991)).

This court denied Defendants' motion to dismiss Odom's negligent infliction of emotional distress claim because she alleged in her complaint that "Defendant Hudson intentionally acted in a physically aggressive manner to create a state of fear or danger to plaintiffs Odom and M.U." *Odom*, 248 F. Supp. 3d at 266 (quoting Amended Complaint ¶ 160) (footnote omitted). Although that claim was sufficient for the court to find it plausible at the motion to dismiss stage that Odom "may have feared for her own safety," *id.*, there is no evidence in the record to now support it.

Odom attempts to establish the emotional distress element in two ways, both of which are unpersuasive. First, she argues that because Defendants have not alleged that Odom did not fear for her own safety, the issue should be presented to the jury. *See* Plaintiffs' Opposition to Defendants District of Columbia and Joseph Hudson's Motion for Partial Summary Judgment at 17, ECF No. 41. This argument misapplies the burdens at the summary judgment stage. Once a movant identifies the absence of a genuine dispute of a material fact—in this case that there is no evidence in the record to demonstrate that Odom suffered emotional distress—then the burden shifts to the non-movant to identify specific evidence that reveals a genuine issue for trial. *See*

17

*Celotex*, 477 U.S. at 323-24.  Odom has not pointed to any evidence that she suffered emotional distress that was serious and verifiable.

Second, Odom argues in her summary-judgment brief that she stated that "[d]efendant Hudson intentionally acted in a physically aggressive manner to create a state of fear or danger to plaintiffs Odom and M.U."  ECF No. 41 at 18 (quoting *Odom*, 248 F. Supp. 3d at 266).  But this statement from this court's opinion on Defendants' motion to dismiss, as mentioned above, was quoting the Amended Complaint.  Allegations from a complaint do not constitute evidence at the summary judgment stage.  Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (quotation marks omitted).  Odom has proffered no evidence that shows she suffered emotional distress that was serious and verifiable, or that she feared for her own safety.

Therefore, Defendant's motion for summary judgment on Odom's negligent infliction of emotional distress claim (part of Count X) will be granted.

## IV.     CONCLUSION

For the reasons stated above, Defendants' Motion for Partial Summary Judgment will be granted in part and denied in part.  Summary judgment will be granted to Defendants on Odom's negligent infliction of emotional distress claim (part of Count X).  The motion will be denied as to all of Urquhart's claims.

An accompanying Order will issue separately.

Date:  September 3, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge